IN RE CHRISTOPHER.

(No. CA533—Decided August 23, 1977.)

*Mr. Thomas E. Ray,* for appellee, Sheila Christopher Sherman.

*Mr. Michael Boller,* guardian ad litem and appellant, for himself.

DOWD, J. This is an appeal prosecuted by a guardian ad litem of a child now nearly four years of age. The ap-

peal contests the termination of a temporary custody order based on a previous finding of dependency. The termination has the dual effect of returning the child, Shawn Christopher, to his natural mother and taking him from his prospective adoptive parents. A chronological history of the proceedings follows.

Shawn Christopher was born on September 14, 1973, and nine months later taken from his mother following a filing of a complaint in the Juvenile Court of Morrow County alleging Shawn to be a dependent child.[1]

On July 1, 1974, the Juvenile Court declared Shawn to be a dependent child and granted custody to the Morrow County Welfare Department.

On August 30, 1974, and without intervention or order from the Juvenile Court, the Morrow County Welfare Department placed Shawn with his mother. That arrangement lasted until January 11, 1975, when Shawn was retrieved from his mother after she had temporarily abandoned the child with friends.

On September 30, 1975, permanent custody was granted to the Morrow County Welfare Department and Shawn was placed with prospective adoptive parents.

On April 5, 1976, Shawn's mother filed an action in *habeas corpus* seeking custody of Shawn and challenging the validity of the permanent custody order of September 30, 1975.

On August 12, 1976, the writ of *habeas corpus* was denied but the Morrow County Juvenile Court, on its own motion, vacated its prior permanent custody order.[2]

Shawn's mother then filed a notice of appeal on August 25, 1976, but subsequently dismissed the appeal and on

[1]The complaint in dependency alleged in relevant part as follows:

"* * * Shawn Stewart Christopher * * * who appears to be a dependent child, in that the child is destitute and homeless and without proper care or support of its parent and whose condition or environment is such as to warrant the State, in the interest of said child, in assuming its guardianship * * *."

[2]The proceedings by which permanent custody was granted were fatally defective in that the indigent mother was not provided with counsel and the notice of the hearing was insufficient.

November 29, 1976, filed a motion to terminate temporary custody of the Morrow County Welfare Department.

On December 7, 1976, the prosecuting attorney of Morrow County filed, on behalf of the Morrow County Welfare Department, a motion for permanent custody of Shawn.

The motions came on for hearing on December 16, 1976. A visiting judge was assigned to hear the motion. The visiting judge dismissed the motion for permanent custody because the motion did not set forth the grounds upon which the request was based and also because the necessary notice requirements had not been met. The trial court then heard testimony in support of the motion to terminate the temporary custody.[3] At the conclusion of the hearing, the trial court opined:

"Court: Well, I have been a juvenile judge for 29½ years, and I never had a case that gave me any more difficulty than this, more difficulty to decide than this one, and one in which I felt the decision I feel compelled to render displeases me any more. A real tragedy has occurred here and the traumatic impact on this child is going to be horrendous no doubt. At the same time we can't deprive parents of their children permanently and place them for adoption simply because somebody else can provide somewhat better homes. If that were the criteria we would all lose our children because there is always someone who could provide a somewhat better home than what we have. There is no question, this mother has not been an ideal mother, but there is no showing as of this time, that she is unsuitable, and the Court's decision has to be based on what the conditions are now. Now, we have, of course, to take into consideration what has transpired in the past as prologue and give that due consideration in making our present determination, but at the same time, this mother has rights. And there is no question but what, in this case, she has a right to the custody of her child as

---

[3]The testimony viewed most favorably to the natural mother indicates that she had married, sought counseling and demonstrated the normal maternal instinct of concern for her child.

unpleasant as it may be to some of us in the court room. She has a right to the child, and it's this Court's duty to see that the child is returned to her.

"Now, the Court's ruling is going to be that the status of the child as a dependent child continues. However, Section 2151.353 provides when a child is found to be dependant the Court may permit the child to remain with his parents, guardian or other custodian, subject to such conditions and limitations as the Court prescribes, including supervision as directed by the Court for the protection of the child.

"It is the order of this Court that the motion to terminate the temporary custody of the Morrow County Welfare Department is well taken and sustained. However, the Court finds that the child's status as a dependent child continues and therefore, the Court will order the child returned to the mother's custody under the supervision of the Court.

"Now I cannot under the circumstances order this child returned forthwith. I am going to order the Morrow County Welfare Department to see that the child is returned to the custody of the mother on December 27th so the adoptive home where this child is now won't be torn asunder at this time of year. Mrs. Sherman, you must understand this child continues as a ward of the Court under the supervision of the Court and regular visits will be made to your home by a case worker designated by the Court. And we will expect you to cooperate in every way with the case worker designated.

"I want to point out to you that while you do have rights as parents, those rights can be forfeited by abandonment or neglect or misconduct. So it's important for you to bear this in mind. And I want you to also be aware of the tremendous responsibility, you are taking a child from a home in which he has been for better than a year and I am sure it's a happy home, well adjusted home, and the adjustment for the child is going to be a very severe thing, and we will soon know whether or not you are really capable of being a mother to this child, because you are go-

ing to have a tremendous responsibility. I don't think you have any idea, at this point, what you are taking on, and if your marriage survives this, then it's a good marriage, and I hope it does.''

At the time of the December 16, 1976, hearing counsel for Shawn's mother was the prosecuting attorney elect of Morrow County, Thomas Ray. Ray has continued to represent Shawn's mother in this appeal. The Morrow County Welfare Department was represented by its designated counsel, the prosecuting attorney of Morrow County, Dean Curl.

Following the December 16, 1976, hearing, Dean Curl, acting as prosecuting attorney of Morrow County, moved the trial court as follows:

"1. To reconsider its decision pronounced from the Bench on December 16, 1976, prior to journalization thereof for the reason that said hearing was procedurally and substantially defective as a matter of law for the reason that a guardian *ad litem* was not appointed by the Court to protect the interest of Shawn Christopher in said proceedings, the interest of said child and his Mother being in great conflict, said appointment being required as a matter of law by the provisions of JR 4 (B);

''2. To appoint a guardian *ad litem* for Shawn Christopher to protect his interests in any further proceedings relating to his custody, and fix compensation for the services of appointed counsel and/or guardian *ad litem;*

''3. To grant a new hearing upon the Motion of Sheila Christopher at which time the guardian *ad litem* may participate in behalf of Shawn Christopher;

"4. To modify and/or stay the pronouncement of the Court that physical custody of Shawn Christopher be delivered to Sheila Christopher on December 28, 1976;

''5. To grant an oral hearing upon the foregoing Motion prior to December 31, 1976, at which time the movant's standing in said case would apparently terminate by reason of the expiration of his term as Prosecuting Attorney.''

On December 23, 1976, a memorandum-opinion was

filed by the trial court. He denied the request for reconsideration of his verbal order of December 16, 1976, but appointed Dean Curl as the guardian ad litem for Shawn Christopher and stayed execution of his verbal order of December 16, 1976, pending appeal and directed that Shawn Christopher remain in the proposed adoptive home pending review and further orders.

On January 18, 1977, the trial court's ruling of December 16, 1976, terminating custody of the Morrow County Welfare Department and his memorandum-opinion of December 23, 1976, were each journalized so that the order to return Shawn to his mother was stayed and Dean Curl was appointed as guardian ad litem and counsel for Shawn.

On February 9, 1977, the resignation and withdrawal of Dean Curl as guardian ad litem and counsel was filed and on the same day Michael Boller of Sidney, Ohio, was appointed successor guardian ad litem.

On February 17, 1977, Mr. Boller moved for further hearing on the motion to terminate the custody of the Morrow County Welfare Department or in the alternative for a "finding of fact and law" as to the journal entry filed January 18, 1977. That motion was overruled on February 17, 1977. Michael Boller as attorney and guardian ad litem for Shawn Christopher filed a notice of appeal to the orders entered January 18, 1977, and February 17, 1977.

The assignments of error follow.

"No. 1. The Court erred in failing to appoint a guardian-ad-litem or counsel for Shawn Christopher prior to the hearing which resulted in the restoration of his custody to Sheila Sherman, and in failing to reconsider its decision and to grant a new hearing which would allow participation by the guardian-ad-litem or counsel.

"No. 2. The Court erred in refusing to admit evidence pertaining to circumstances surrounding the finding of dependency of the said Shawn Christopher prior to July 1, 1974.

"No. 3. The Court erred in making the best interests of Shawn Christopher subservient to the rights and interests of his natural mother."

The first assignment of error addresses the issue of whether the trial court erred in failing to timely appoint a guardian ad litem for Shawn Christopher. Juvenile Rule 4 (B) states:

"Guardian ad litem; when appointed.

"The court shall appoint a guardian ad litem to protect the interest of a child or incompetent adult in a juvenile court proceeding when: * * *

"2. The interest of the child and the interest of the parent may conflict."

In the given case, through no fault of Shawn, he was placed with prospective adoptive parents for more than a year prior to the December 16, 1976, hearing on the motion to terminate the temporary custody of the Morrow County Welfare Department. The fact of that placement as well as the concomitant fact that the natural mother had demonstrated limited interest in Shawn following his birth were readily apparent during the hearing on December 16, 1976. Such facts in the setting of the motion to terminate the temporary custody of the Morrow County Welfare Department and return Shawn to his mother lead inescapably, in our judgment, to the conclusion that "the interest of the child and the interest of the parent may conflict." This court is not prepared to state that in every hearing to terminate temporary custody of a dependent child the appointment of a guardian ad litem for the child is required. But, in our judgment, the mandate of Juvenile Rule 4(B)(2) applies in this situation and should have been applied by the trial court either before or during the December 16, 1976, hearing. Thus, we find that the first assignment of error must be sustained and the judgment of the Juvenile Court of Morrow County terminating the custody of Shawn Christopher with the Morrow County Welfare Department and returning him to his mother Sheila Christopher Sherman subject to the continuing supervision of the court is reversed and vacated and this cause is remanded to that court for further proceedings according to law.

In that context, we note that Michael Boller's initial interest in this matter, as candidly conceded by Mr. Bol-

ler during oral arguments, was prompted by the interest of the prospective adoptive parents. In our judgment, Michael Boller should not participate further as the guardian ad litem of Shawn Christopher for it is possible that the interest of Shawn Christopher and his prospective adoptive parents may also conflict.

The guardian ad litem and counsel for Shawn Christopher should be a person or persons who can serve uninhibited by any ties or loyalties with either the mother of Shawn Christopher or the proposed adoptive parents of Shawn Christopher. By such a declaration, we imply no criticism of the scholarly, zealous and professional manner by which Michael Boller has represented Shawn Christopher before this court.

Upon remand, an obvious additional conflict exists due to the fact that Thomas Ray, counsel for the mother of Shawn Christopher, now serves as the prosecuting attorney for Morrow County and as such as counsel for the Morrow County Welfare Department. We recommend that this conflict be reviewed by the Juvenile Court and appropriate orders made so that both Shawn Christopher's mother and the Morrow County Welfare Department are properly represented.

Having concluded that this matter must be remanded for further proceedings according to law, we turn to the disposition of the remaining assignments of error.

The second and third assignments of error are directed to the type of evidence admissible as well as the nature of the issue to be resolved on the parent's motion to terminate a temporary custody order based upon a previous finding of dependency. We find no reported decisions coping with the successful or unsuccessful attempts on the part of the parent to terminate a previous temporary order of custody granted pursuant to R. C. 2151.353. R. C. 2151.35 requires that the court first find from clear and convincing evidence that the child is dependent before proceeding to a disposition. However, no statutory guidance exists where a parent attempts to establish that a previously found state of dependency no longer exists.

The court's colloquy at the conclusion of the hearing in which he announced his ruling is the basis for the third assignment of error.

First, we address the nature of the issue to be resolved. The trial court's colloquy implies that the sole issue is an abstract consideration of the parent's present suitability or fitness for the role of parent.[4]

In that context the natural parent's present status, with respect to present living conditions, financial resources, maturity and emotional stability, is a critical factor, but of first importance is the consideration of the child's best interest. The power granted by the legislature to the courts to take a child from a parent upon a finding of dependency or neglect has as its obvious motivation the welfare of the child. The fact that the natural parent so deprived of his or her child subsequently achieves a status where he or she is found fit to resume the duties of parenthood does not necessarily equate with the child's best interest at that time.[5] The biological parent by the tragedy of circumstances, not the least of which is the passage of time, may be unable to cope with the difficult challenge that the resumption of parenthood with the child in question would demand. In short, we find the question of the parent's suitability or fitness is inexorably intertwined with the child's best interest where the issue is whether the parent's motion to terminate temporary custody based on a prior finding of dependency should be granted. We view the child's best interest to include as major components the child's psychological and emotional development. By the same token we consider the question of financial or material resources to be substantially less significant. We conclude that the court must address the question of the

---

[4] See *In re Fassinger* (1974), 43 Ohio App. 2d 89, *In re Darst* (1963), 117 Ohio App. 374 and *In re Kronjaeger* (1957), 166 Ohio St. 172, which suggests support for the proposition that only present suitability or fitness of the parent is at issue. But see contra, *In re Baby Girl S* (1972), 32 Ohio Misc. 217.

[5] See *In re Douglas* (1959), 11 Ohio Op. 2d 340; *In re Infant East* (1972), 61 Ohio Op. 2d 38; *In re Baby Girl S, supra.*

ability of the natural parent to cope with the child where the separation necessarily has resulted in the child becoming a stranger to the natural parent. The court is not unmindful of the fact that decisions of this type represent hard choices reminiscent of the dilemma King Solomon faced in biblical times. However, such difficult choices do not permit the luxury of judicial abdication.

Turning now to the third assignment of error, the trial court's colloquy was not reduced to findings of fact separately stated from conclusions of law. We view his verdict as a general verdict only and we are unable to declare with certainty that he ignored the child's interest in contemplating the natural parent's suitability or fitness. The third assignment of error is overruled.

The second assignment of error challenges the trial court's ruling limiting testimony at the December 16, 1976, hearing to only those events which transpired *after* the order of July 1, 1974, granting temporary custody to the Morrow County Welfare Department on the ground that testimony of conduct prior to that date was irrelevant. In our view, where a parent seeks to terminate the temporary custody order based on a prior finding of dependency, the inquiry must of necessity be broad and searching. The conditions that produced the original stage of dependency bear directly on the intertwined issues of the parent's suitability and the child's best interests. The trial court erred in denying the Morrow County Welfare Department the opportunity to present evidence bearing on the original relationship between mother and child. The second assignment of error is sustained.

For the reasons set forth in sustaining the first and second assignments of error, the judgment of the Morrow County Juvenile Court terminating temporary custody with the Morrow County Welfare Department is reversed and vacated and this cause is remanded to the Morrow County Juvenile Court for further proceedings according to law.

*Judgment reversed and cause remanded.*

RUTHERFORD, P. J., and PUTMAN, J., concur.