**In re NATION.**

[Cite as *In re Nation* (1989), 61 Ohio App.3d 763.]

Court of Appeals of Ohio,
Shelby County.

No. 17–88–15.

Decided April 13, 1989.

*Michael Boller*, prosecuting attorney, and *Duane Goettemoeller*, for appellee state of Ohio.

*Michael L. Smith*, for appellant Laura Tingley Nation.

JOHN W. KEEFE, Judge.

Laura Tingley Nation, the appellant, was born on June 22, 1970. She took her husband's last name, "Nation," when she was married to Kevin Nation in July 1988. On August 18, 1988, Laura Nation received a summons from the Shelby County Juvenile Court Division requiring her to appear in court on August 22, 1988, to respond to two complaints charging her with delinquency as the result of her violation of R.C. 2913.31(A)(1), forgery, and also her violation of R.C. 2923.03, complicity to commit aggravated burglary, both alleged to have occurred while she was still seventeen years of age.

Laura did in fact come before the juvenile division judge on August 22, 1988, who accepted "guilty" pleas from Laura on both charges. A verbatim account of the court's sentencing follows:

"THE COURT: Well the Court can't tolerate this kind of thing and married or not, I don't know the details of that, but the Court is going to sentence you to the Department of Youth Services for one (1) year or until a maximum of your 21st birthday. And I'm going to require that you make restitution of the things that have been taken and you are required to pay the court costs in this action. How long you stay at the Department of Youth Services really is a matter for you [to] determine. It depends on how you cooperate and how you join the program so to speak. Where you [are] going, it will be at Riverside— it will be an all girl facility—it's right on the Olantangy [*sic*] River, and I guess it's the Olantangy [*sic*] but anyhow that's the facility where you're gonna go. I don't know if you learned your lesson or not, but the Court owes this community something too, and I'm not going to just let this type of thing go by so that'll be the order of the Court."

Laura was promptly remanded to the Ohio Department of Youth Services where she remained until admitted to bail by this court on October 6, 1988.

The appellant advances four assignments of error all remonstrating against the juvenile division's judgment of August 22, 1988. Accordingly, appellant requests an order directing that her pleas of "guilty" be withdrawn and that

her case be remanded to the trial court for appointment of counsel and resumption of the proceedings involving her.

The state maintains that appellant's first and third assignments of error essentially are the same, and responds and argues accordingly. These two assignments are interrelated and generally we so consider them.

### Assignment of Error One

"It is an abuse of discretion for the Juvenile Judge to accept a waiver of counsel and a plea of guilty where the facts demonstrate that the waiver was not freely and voluntarily made."

### Assignment of Error Three

"It is error for the Juvenile Judge to accept a waiver of counsel when the court is considering depriving the defendant of her liberty."

The right to counsel afforded by the Sixth Amendment to the United States Constitution is, of course, applicable to juveniles. Juv.R. 29(B) and 4(A). The solicitude of the courts of this nation for the protection of any constitutional right by juveniles is articulated impressively, for example, in *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

The alleged wrongdoings of which Laura presently stands convicted were committed while she was seventeen, a juvenile. By the time she appeared before the trial judge she was age eighteen, by two months. Regardless of this background, she was entitled to counsel at the hearing held on August 22, 1988, unless she freely, voluntarily, intentionally, and intelligently relinquished that right. She was entitled to appointed counsel, if indigent. *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, enunciates the doctrine that in order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.

In the *State v. Gibson* opinion, the following is included:

"Counsel cites further the following from *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723 [68 S.Ct. 316, 323, 92 L.Ed. 309, 320]:

" ' " * * * This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be

made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. * * * '" 45 Ohio St.2d at 376–377, 74 O.O.2d at 531, 345 N.E.2d at 406.

See, also, *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

■ We have detailedly examined transcripts of the August 22 and September 7, 1988 hearings. At the earlier one, the trial court held that Laura had waived her right to counsel; at the September hearing, the judge upheld his earlier decision *vis-a-vis* the girl's waiver of counsel. The general subject of representation was discussed with Laura on August 22, but that by itself is not enough to satisfy the rules regarding right to counsel and effective waivers. The United States Supreme Court has made it clear that the determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst, supra.*

We find the putative waiver to be deficient. In arriving at this evaluation, serious consideration is given to one of Laura's strategic answers at the August 22 hearing when she only tentatively and unexplicitly indicated that she "don't think so" when asked if she wanted an attorney to represent her. The judge perceptively sensed the girl's equivocation and seemingly attempted to help her make up her mind, stating to Laura:

"You can talk to your Mom about it if you wish."

"Mom," who was the victim in one of the delinquencies charged against her daughter, Laura, was no help. "Mom's" contribution to Laura's hesitation about whether Laura should have counsel was:

"She has already signed waivers that she was guilty."

Whatever else was asked of Laura, or what she said, at the August 22 hearing, did not overcome what comes through clearly from the transcript of proceedings as her uncertainty as to whether she should waive counsel. At the time of the hearing Laura had only recently turned age eighteen and had never been arrested previously or in juvenile court before. Moreover, prior to the August 22 hearing she had been reassured by a deputy sheriff of Shelby County that "she probably would not go to jail." Unfortunately for Laura, that presumably well-intentioned prophecy failed to eventuate.

⁎ Laura's background and experience as of the hearing date of August 22, 1988, when the waiver was adjudged, are of great importance. Counsel for

the appellee (state) in its brief filed December 21, 1988, categorized Laura as "an emancipated, educated woman of eighteen who had had ample opportunity to contact counsel before the hearing of August 1988. * * * [She] was aware of her rights and possible penalties and acted upon same."

Incongruously, on September 30, 1988, less than three months earlier, and only about a month following the August 22 hearing, the *same counsel* believed Laura exhibited "a lack of maturity, and the type of personality which is inconsistent with returning to court to face certain incarceration in [the] event her appeal is unsuccessful. She has demonstrated [a] record of irresponsibility, and no record of reliability."[1]

If Laura were immature, irresponsible and unreliable, which appellate counsel for the state believed her to be about a month after the August 22 hearing, then the so-called waiver proceedings of August 22 fell short of establishing that Laura relinquished her right to counsel freely, voluntarily, intentionally and intelligently.

Assignment of Error One is well-taken and we sustain it.

■ · Assignment of Error Three suggests that a different rule should apply in a waiver of counsel situation when the court is considering depriving a defendant of liberty as distinguished from a waiver when no deprivation of liberty is judicially contemplated. We know of no basis for validating such a postulation. We overrule this assignment of error.

■ In Assignment of Error Two, the appellant contends that it was an abuse of discretion for the trial judge to fail to appoint a guardian ad litem where the interest of the child and the interest of the parents conflict. We do not find the argued conflict to be so clear. "Abuse of discretion" connotes more than an error of law or of judgment. *Pembauer v. Leis* (1982), 1 Ohio St.3d 89, 91, 1 OBR 125, 127, 437 N.E.2d 1199, 1201; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 151, 157, 404 N.E.2d 144, 150. We fail to find the abuse of discretion claimed. Assignment of Error Two therefore does not avail.[2]

■ The remaining assignment—number four—is as follows:

---

1. The said September 30, 1988 evaluation by counsel for the state is included in the record as part of a filing denominated "Prosecutor's Position on Release of Defendant on Bond Pending Appeal."

2. Since we have found Assignment of Error One well-taken, and in connection with that decision there will be a remand to the trial court, that court will have a fresh opportunity to review the necessity and appropriateness of the designation of a guardian ad litem. The trial court *may* decide to appoint counsel for the appellant which arguably would seem probably to obviate the necessity for a guardian ad litem.

"It is an abuse of discretion for a Juvenile Court judge to commit a minor to the Department of Youth Services without a presentence report."

This assignment admittedly presents a plausible challenge because under the circumstances of Laura's youthful age, background and inexperience with police and the juvenile division, it would seem that a presentence report would have been a valuable aid to the trial judge. However, we are unprepared—and we consider, unjustified—to declare an abuse of discretion. We overrule Assignment of Error Four.

We reverse and remand to the trial court for further proceedings consistent with this opinion. Accordingly, the August 22, 1988 adjudication of appellant as a delinquent, and the accompanying sentence, are set aside. The appellant is entitled to counsel at the trial level unless she relinquishes her right thereto freely, voluntarily, intentionally and intelligently.

*Judgment reversed*
*and cause remanded.*

EVANS, P.J., and BRYANT, J., concur.

JOHN W. KEEFE, J., retired, of the First Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.