## In re SAPPINGTON.

[Cite as *In re Sappington* (1997), 123 Ohio App.3d 448.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16063.

Decided Oct. 31, 1997.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Carley J. Ingram,* Assistant Prosecuting Attorney, for appellee.

*Richard D. Donenfeld,* for appellant.

BROGAN, Judge.

Appellant, David Sappington, a minor child of seventeen at the time of the judgment below, appeals from a judgment of the Montgomery Count Court of Common Pleas, Juvenile Division. Sappington pleaded guilty to four counts of gross sexual imposition contrary to R.C. 2907.05(A)(4), was found delinquent, and was committed to the Ohio Department of Youth Services ("DYS") for a minimum period of twenty-four months and a maximum period not to exceed his attaining the age of twenty-one. Sappington raises as error the juvenile court's failure to appoint a guardian *ad litem* to represent him. We find that the court abused its discretion by not appointing a guardian *ad litem* where the record indicated a strong possibility of conflicting interests between the juvenile and his father, who represented him at the adjudicatory and dispositional hearing. Therefore, we reverse and remand the case for new proceedings.

I

On March 26, David Sappington was charged with four counts of delinquency and gross sexual imposition by a complaint filed with the juvenile division by the Miamisburg Police Department. At that time, he resided in Dartmouth Hospital. On April 25, 1996, David made his first juvenile court appearance on these charges. He was unrepresented by counsel but was accompanied by his father. Also present were representatives of South Community Mental Health Center and Dartmouth Hospital. The magistrate advised David of his rights and informed him of the possible dispositions of the case. When the court asked whether David wished to exercise his right to an attorney, the following colloquy occurred:

"THE COURT: * * * David Sappington, do you wish to talk to an attorney first of all?

"A: Yes.

"THE COURT: Okay. Are you going to hire one or—

"A: I don't have any money.

"THE COURT: I know you don't have any money. I, but—

"[Father]: Are you sure you want to talk to an attorney at this point?

"A: Well, I'm pleading guilty, but do I need one?

"[Father]: I don't think so, David.

"A: I don't need one then.

"THE COURT: Are you sure[,] son?

"A: Yes.

"THE COURT: You understand. All right. Just wanted to double check for you before you go on.

"A: Okay."

The magistrate then related the charges to David. When asked, David responded that he understood the charges and had no questions about them. The magistrate then accepted David's admission of guilt.

Later, David's father informed the magistrate that his son had suffered from psychological problems from an early age. He related that, in the years before the hearing, David had become suicidal and threatening toward other people, including his parents. He was hospitalized for one week in December 1994. After his release, the threats against his family increased. His parents then placed him with unofficial foster parents for about a year, until that household could no longer manage his increasingly difficult behavior. After his return to his parents' house, David again became threatening. In July 1995, he appeared before the juvenile court on charges of domestic violence against his mother. Between July 1995 and January 1996, David was placed with two different foster homes by South Community, Inc. In January 1995, he was transferred to Dartmouth Hospital. David's father expressed concern to the magistrate that David's eligibility for psychological treatment through South Central, Inc. and Dartmouth might terminate upon his eighteenth birthday, if David was not confined beyond that point. He encouraged the magistrate to consider "David's needs and the community's need" in determining the disposition of the case.

A representative from Dartmouth Hospital also spoke at the adjudicatory hearing. He informed the magistrate that David had been diagnosed with a number of mental disorders, including schizoaffectiveness, bipolar disorder, attention deficit disorder, post-traumatic stress, and several other illnesses. He also related that David had trouble distinguishing what was true from what was not.

The magistrate held a dispositional hearing on June 4, 1996, attended by David, his father, a probation officer, and representatives from Family Services, South Community, and Dartmouth Hospital. At the hearing, the magistrate announced his intention to recommend that David be committed to the Department of Youth Services for consecutive terms on all four counts. Given an opportunity to comment, David's father and representatives from South Community and Dartmouth expressed their agreement with his decision. On July 3, the court entered four orders upon the magistrate's decision, each entry committing David for a six-month term to be served consecutively with the others.

## II

On appeal, appellant raises four assignments of error, all relating to the procedure observed below. We will consider only appellant's second assignment of error, because we find that it disposes of the instant appeal. With his second of assignment of error, appellant asserts:

"The trial court committed reversible error when it failed to appoint a guardian ad litem for the appellant on April 25, 1996, or thereafter."

Both R.C. 2151.281(A) and Juv.R. 4(B) mandate that a juvenile court must appoint a guardian *ad litem* to protect the interests of a child involved in matters before the court under certain designated sets of circumstances. Appellant argues that a conflict of interest existed between him and his father so that the court should have acted under these provisions. The relevant portions of R.C. 2151.281(A) read as follows:

"(A) The court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

"* * *

"(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian."

Functionally similar portions of Juv.R. 4(B) read:

"(B) Guardian ad litem; when appointed. The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

"* * *

"(2) The interests of the child and the interests of the parent may conflict."

■ Because these provisions are mandatory, the failure of a court to appoint a guardian *ad litem*, when such an appointment is required under the rule or the statute, constitutes reversible error. See *In re Adoption of Howell* (1991), 77 Ohio App.3d 80, 92, 601 N.E.2d 92, 99–100. Resolution of the issue raised by appellant's assignment of error, therefore, turns on whether the record below shows a conflict of interests between father and son sufficient to merit reversal. We note, however, that the magistrate did not explicitly find an absence of conflicting interests. Rather, the finding was implicit in his decision to hold the two hearings without appointing a guardian *ad litem.*

Ohio appellate courts have not heretofore followed a single, clear standard when reviewing a trial court's determination not to appoint a guardian *ad litem.* They have differed as to the quantum of evidence of conflicting interests between

parent and child they found necessary to support a reversal of the lower court. Some courts have paid special consideration to the language of Juv.R. 4(B)(2) in reaching their determinations. The rule requires an appointment if "[t]he interests of the child and the interests of the parent *may* conflict." (Emphasis added.) To this extent, the rule differs from R.C. 2151.281(A)(2) which mandates appointment when "[t]he court finds that *there is* a conflict of interest between the child and the child's parent, guardian, or legal custodian." (Emphasis added.) Consequently, a number of courts have held that, when the record from below indicates a "strong possibility" that interests may conflict but the lower court did not appoint a guardian *ad litem*, there is reversible error. *In the Matter of Trembley* (June 24, 1983), Ashtabula App. No. 1108, unreported, at 3, 1983 WL 6160; see, also, *In re Christopher* (1977), 54 Ohio App.2d 137, 143, 8 O.O.3d 271, 274–275, 376 N.E.2d 603, 607 (reversing lower court where appellate court concluded that interests "may conflict"); *In re Adoption of Howell* (1991), 77 Ohio App.3d 80, 92, 601 N.E.2d 92, 100 (finding that a "guardian ad litem is required under Juv.R. 4(B)(2)" where "the child's and the parent's interest could conflict"). Learned comment on Juv.R. 4(B)(2) supports the emphasis placed in these opinions on the rule's language. One writer explained:

" 'The rules provision for the appointment of a guardian ad litem for the child when the interest of the parent may conflict, should be interpreted to make appointment mandatory in practically all neglect or dependency proceedings * * *. The rules require no such finding (actual conflict of interest), only the appearance of a possible conflict * * *.' " *In the Matter of Myer* (June 16, 1981), Delaware App. No. 80–CA–10, unreported, at 2, 1981 WL 6316 (quoting Judge Don Young in Anderson, Ohio Family Law, Section 4.12).

Other courts have required a more clear showing of conflict before reversing the lower court's judgment. See, *e.g., In re Nation* (1989), 61 Ohio App.3d 763, 767, 573 N.E.2d 1155, 1157–1158; *In re Wilkins* (June 26, 1996), Hancock App. No. 5–96–1, unreported, at 3, 1996 WL 355046. In *Nation,* the Shelby County Court of Appeals emphasized the abuse of discretion standard applicable to appellate review of a lower court's factual findings. 61 Ohio App.3d at 767, 573 N.E.2d at 1157–1158. Noting that " 'abuse of discretion' connotes more than an error of law or of judgment," the court was unable to find clear enough evidence of conflict from the record to justify reversal. *Id.*

We are persuaded, from our review of these cases, that the different lines of authority can be reconciled. We agree with those authorities that have found that Juv.R. 4(B) does not require an actual conflict of interest to trigger the need for a guardian *ad litem.* The plain language of the rule mandates that the possibility that interests "may conflict" will suffice. See *Myer, supra.* Nevertheless, the juvenile court is in the best position to weigh the relevant facts in

determining whether a potential conflict of interest exists between the parent and child. See *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774 ("In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record."); see, also, R.C. 2151.281(A)(2) (vesting the trial court with the power to find conflicts of interest). We believe, therefore, that an abuse of discretion standard should apply. Accordingly, we conclude that an appellate court should find reversible error under Juv.R. 4(B)(2) when the record from below reveals a strong enough possibility of conflict of interest between parent and child to show that the juvenile court abused its discretion by not so finding.

In the instant case there are a number of factors that should have indicated to the lower court a potential for conflict of interest. First, we note that David was brought by his family before the juvenile court on a prior charge of domestic violence. The role of a guardian *ad litem* in a delinquency adjudication is to ensure that the statutory rights of the juvenile are protected. *In re Johnson* (1995), 106 Ohio App.3d 38, 42–43, 665 N.E.2d 247, 249–250; *Lovejoy v. Cuyahoga Cty. Dept. of Human Servs.* (1991), 76 Ohio App.3d 514, 517, 602 N.E.2d 405, 407. The danger where the parent has sought the aid of the court against the child is that the interests of the parent may no longer be consistent with a role that properly protects the child's rights. The parent may have an interest, wholly apart from the child's best interest, in committing the child to another's authority. A number of cases have held that juvenile courts erred in failing to appoint a guardian *ad litem* when the parent filed charges against the child. See *In re Spencer* (Dec. 22, 1995), Hamilton App. No. C–950486, unreported (unauthorized use of a motor vehicle); *In Matter of Shaw* (Sept. 27, 1996), Fairfield App. No. 95CA78, unreported, 1996 WL 570861 (domestic violence against mother). Although it appears that David's mother was the complainant on the earlier charge, a husband's interests under these circumstances are not so different from those of his wife to make this factual distinction very significant.

In *Wilkins, supra,* the appellate court found no conflict of interest between father and child where the charge against the child was hitting the father. In that case, however, the court of appeals noted that the father did not attempt to persuade the court to act in any manner inconsistent with the child's interests. *Id.* The court noted particularly the father's lack of opposition to his son's commitment to a remedial institution rather than the harsher environment of a DYS facility. *Id.* In the instant case, however, David's father did not demur to the imposition of consecutive sentences or to the commitment to the DYS. The facts of the *Wilkins* case are, for this reason, distinguishable from the case *sub*

*judice.* Indeed, David's father, at the adjudicatory hearing, requested the court to consider confining David beyond his eighteenth birthday. It may well be that such commitment was in David's best interest. It is also probable, however, that such a request shows a conflict of interest inconsistent with the role of ensuring that David's statutory rights were protected. See *In re Johnson, supra,* 106 Ohio App.3d at 43, 665 N.E.2d at 250 (finding that advice to the court that "confinement was the best solution" was against child's interest under R.C. 2151.281[A].). The potential for conflict of interest here appears greater in light of the history in which David's family sought remedies that placed him outside the family home.

■ The magistrate also witnessed the colloquy during which, after David expressed his interest in retaining an attorney, his father convinced him that he did not need one. This incident too should have suggested a possible conflict of interest between David and his father. A juvenile's right to representation by an attorney is one recognized by statute. See R.C. 2151.352. One of the central purposes of the guardian *ad litem* rule is to ensure protection of such rights. See *Johnson, supra.* The father's actions in preventing David from pursuing his expressed interest in speaking to an attorney suggest, at least, a potential for conflicting interests. We also observe that the magistrate did not make clear that David had a right to counsel even if he could not afford one. By not doing so, the magistrate left open the possibility that David's father was acting for financial reasons not necessarily consistent with his son's best interest.

■ In evaluating the need for a guardian *ad litem,* courts have also considered whether the minor was represented by counsel. See *Johnson, supra,* 106 Ohio App.3d at 43, 665 N.E.2d at 249–250; *Nation, supra,* 61 Ohio App.3d at 767, 573 N.E.2d at 1158, fn. 2. A juvenile court should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person present to protect the rights and interests of the minor. In the hearings below, David was not represented by an attorney.

Based on these considerations, we must conclude that the record from below reveals a strong possibility of conflicting interests between father and son. We do not intend to say that we find that David's father acted in actuality against the best interest of his son during the hearings before the magistrate. Nevertheless, we read Juv.R. 4(B)(2) as a prophylactic rule that safeguards the interests of minors during all juvenile court proceedings. The potential for conflict of interest is sufficient, under the rule, to render a proceeding defective. We hold, therefore, that the juvenile court abused its discretion in failing to find a potential conflict of interest and by failing to appoint a guardian *ad litem* as required by Juv.R. 4(B). Appellant's second assignment of error is sustained. Accordingly, we reverse the adjudication and sentence and we remand the case to the juvenile division for proceedings not inconsistent with this opinion.

**456**

Because our decision on this assignment of error disposes of this appeal, appellant's remaining assignments of error are rendered moot. In a new adjudicatory hearing, 'David and his guardian *ad litem* may consider afresh whether to admit or deny the charges against him and whether to seek legal representation.

*Judgment reversed*
*and cause remanded.*

FREDERICK N. YOUNG, P.J., and WOLFF, J., concur.