[Cite as *State v. Stanford*, 2018-Ohio-3961.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-873 |
| | | (C.P.C. No. 16CR-5230) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Keith D. Stanford, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 28, 2018

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued**: *Seth L. Gilbert*.

**On brief**: *Timothy Young*, Ohio Public Defender, *Victoria Bader*, and *Timothy B. Hackett*, for appellant. **Argued**: *Victoria Bader*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, P.J.

{¶ 1} Keith D. Stanford, defendant-appellant, appeals from an order of the Franklin County Court of Common Pleas, in which the court found him guilty of robbery, a violation of R.C. 2911.02 and a second-degree felony; aggravated robbery with specification, a violation of R.C. 2911.01 and a first-degree felony; two counts of aggravated robbery, violations of R.C. 2911.01 and first-degree felonies; and burglary, a violation of R.C. 2911.12 and a second-degree felony.

{¶ 2} The underlying details of the crimes appellant committed are not relevant to the issues on appeal. On April 25, 2016, a complaint was filed against appellant in the Franklin County Juvenile Court in case No. 16JU-5284, alleging appellant committed

three counts of aggravated robbery, which would be violations of R.C. 2911.01(A) and first-degree felonies if committed by an adult. Subsequently, the State of Ohio, plaintiff-appellee, filed a motion to relinquish jurisdiction, seeking a mandatory bindover to the common pleas court ("adult court") or, in the alternative, discretionary bindover to adult court, and amended the complaint to add a three-year firearm specification to each count.

{¶ 3} On May 16, 2016, a second complaint was filed in the Franklin County Juvenile Court in case No. 16JU-6221, alleging appellant committed burglary, which would be a violation of R.C. 2911.12(A)(2) and a second-degree felony if committed by an adult. Subsequently, the state filed a motion to relinquish jurisdiction in that case, seeking a discretionary bindover to adult court.

{¶ 4} On May 26, 2016, a third complaint was filed in case No. 16JU-6730, alleging appellant committed robbery, which would be a violation of R.C. 2911.02(A)(2) and a second-degree felony if committed by an adult. Subsequently, the state filed a motion to relinquish jurisdiction in that case, seeking a discretionary bindover to adult court.

{¶ 5} On August 29, 2016, the juvenile court held a probable cause hearing in all three cases. Because the aggravated robbery charges in case No. 16JU-5284 included a firearm specification, those charges were subject to mandatory transfer to the common pleas court, while in the two remaining cases appellant was entitled to an amenability determination. A lengthy discussion took place between counsel, appellant, and appellant's parents regarding, among other issues, whether appellant should accept a plea agreement. Ultimately, pursuant to the plea agreement, appellant stipulated to probable cause in all three cases and that he was not amenable to rehabilitation in the juvenile system in case Nos. 16JU-6221 and 16JU-6730. The agreement indicated appellant would plead guilty to a variety of charges, the court would dismiss several juvenile court cases, and there was a joint recommendation that the common pleas court impose a jail sentence of ten years. On September 15, 2016, the trial court issued entries relinquishing jurisdiction in all three cases, with a mandatory bindover in case No. 16JU-5284 and discretionary bindovers in the other two cases.

{¶ 6} On September 26, 2016, an indictment was filed in the common pleas court, charging appellant with multiple offenses. Appellant pled guilty to three counts of

aggravated robbery, one count of robbery, one burglary count, and one three-year firearm specification. On November 22, 2016, the trial court found appellant guilty on these counts, and sentenced appellant to a total of ten years incarceration, consistent with the jointly recommended sentence. Appellant appeals the trial court's judgment asserting the following four assignments of error:

> [I.] The Franklin County Juvenile Court erred when it transferred Keith Stanford's case to criminal court because it did so without obtaining a knowing, intelligent, and voluntary waiver of Keith's right to an amenability determination.
>
> [II.] The juvenile court abused its discretion when it failed to appoint a guardian ad litem for Keith Stanford, in violation of Juv.R. 4(B)(2) and R.C. 215[1].281(A)(2).
>
> [III.] The juvenile court erred when it transferred Keith Stanford's case to criminal court because the mandatory transfer provisions in R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate a child's right to due process and equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Sections 2 and 16, Ohio Constitution.
>
> [IV.] Keith Stanford was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Section 10, Ohio Constitution.

{¶ 7} In his first assignment of error, appellant argues the juvenile court erred when it transferred his case to adult criminal court because it did so without obtaining a knowing, intelligent, and voluntary waiver of his right to an amenability determination. As to discretionary transfers, the court in *State v. Jones*, 8th Dist. No. 99044, 2013-Ohio-3725, ¶ 7, summarized R.C. 2152.12(B) as follows:

> Under R.C. 2152.12(B), after a complaint has been filed charging a child with offenses that would be a felony if committed by an adult, a juvenile court may transfer jurisdiction to the general division of the common pleas court if it finds that (1) the child was 14 years of age or older at the time of the act; (2) there is probable cause that the child committed the act; and (3) the child is not amenable to rehabilitation within the juvenile justice system and, to ensure the safety of the community, the child should be subject to adult sanctions.

{¶ 8}   Juv.R. 30(C) provides:

> Discretionary transfer. In any proceeding in which transfer of a case for criminal prosecution is permitted, but not required, by statute, and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, an amenability hearing shall be held to determine whether to transfer jurisdiction. The criteria for transfer shall be as provided by statute.

{¶ 9}   Here, appellant claims his waiver of his right to an amenability determination was invalid because the juvenile court did not engage in a meaningful colloquy to determine whether his waiver was knowing, intelligent, and voluntary consistent with *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, which also involved the waiver of an amenability hearing in the context of a discretionary transfer. In *D.W.*, the Supreme Court of Ohio found:

> An amenability hearing under R.C. 2152.12(B)(3) may be waived provided (1) the juvenile, through counsel, expressly states on the record a waiver of the amenability hearing and (2) the juvenile court engages in a colloquy on the record with the juvenile to determine that the waiver was made knowingly, voluntarily, and intelligently.

*Id.* at syllabus. By requiring counsel to enter the request, there can be no question that the child was represented and assisted by counsel. *Id.* at ¶ 36. The colloquy allows the juvenile court to fulfill its parens patriae duty by ensuring that the juvenile fully understands and intentionally and intelligently relinquishes the right to an amenability hearing, and it allows the judge to engage in a meaningful dialogue with the juvenile to guarantee that the juvenile's due process rights are protected. *Id.* at ¶ 37.

{¶ 10}   In *D.W.*, the Supreme Court compared the waiver of an amenability hearing to the waiver of counsel and determined that a juvenile court must exercise a similar degree of caution before accepting a child's waiver of an amenability hearing. *Id.* at ¶ 32. In doing so, the court quoted from its decision in *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919:

> An effective waiver of the right to counsel by a juvenile must be voluntary, knowing, and intelligent. * * * In a juvenile court proceeding in which the judge acts as parens patriae, the judge must scrupulously ensure that the juvenile fully understands, and intentionally and intelligently relinquishes, the right to counsel.
>
> In the discharge of that duty, the judge is to engage in a meaningful dialogue with the juvenile. Instead of relying solely on a prescribed formula or script for engaging a juvenile during the consideration of the waiver * * * the inquisitional approach is more consistent with the juvenile courts' goals, and is best suited to address the myriad factual scenarios that a juvenile judge may face in addressing the question of waiver.

*D.W.* at ¶ 29, quoting *C.S.* at ¶ 106-07. The court in *D.W.* noted the holding in *C.S.* was incorporated into the new Juv.R. 3. Juv.R. 3(D) sets forth the requirements for a child's waiver of counsel as follows:

> Any waiver of the right to counsel shall be made in open court, recorded, and in writing. In determining whether a child has knowingly, intelligently, and voluntarily waived the right to counsel, the court shall look to the totality of the circumstances including, but not limited to: the child's age; intelligence; education; background and experience generally and in the court system specifically; the child's emotional stability; and the complexity of the proceedings. The Court shall ensure that a child consults with a parent, custodian, guardian, or guardian ad litem, before any waiver of counsel. However, no parent, guardian, custodian, or other person may waive the child's right to counsel.

{¶ 11} In the present case, appellant admits he expressed his intent to waive his right to an amenability hearing on the record and through counsel. However, he claims the juvenile court did not engage in a meaningful colloquy and failed to fully apprise him of the nature of the hearing, the rights he had, and the consequences of waiving those rights before accepting his stipulation. Appellant contends the court never explained what amenability meant, the purpose of the hearing, or the rights he was giving up by waiving his right to an amenability determination. He claims the court failed to inform him that R.C. 2152.12(C) requires the court to order and review a social investigation and mental examination prior to conducting an amenability hearing, and it failed to inform him that

R.C. 2152.12(B) requires the court to consider 17 enumerated factors and any other relevant factors for and against transfer.

{¶ 12} Initially, we note appellant concedes he did not raise this issue in the court below; thus, the plain error standard of review applies. The Supreme Court explained the plain error analysis to be applied in juvenile delinquency proceedings in *State v. Martin*, ____ Ohio St.3d ____, 2018-Ohio-3226:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error" that was not raised below. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (2002). First, an error, "*i.e.*, a deviation from a legal rule," must have occurred. *Id.*, citing *State v. Hill*, 92 Ohio St.3d 191, 200, 2001-Ohio-141, 749 N.E.2d 274 (2001), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Second, the error complained of must be plain—that is, it must be "an 'obvious' defect in the * * * proceedings." *Id.*, quoting *State v. Sanders*, 92 Ohio St.3d 245, 257, 2001-Ohio-189, 750 N.E.2d 90 (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 1997-Ohio-367, 684 N.E.2d 47 (1997). "Third, the error must have affected 'substantial rights.' We have interpreted this * * * to mean that the trial court's error must have affected the outcome" of the proceedings. *Id.*; *see also* [*State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 50-51.]

*Id.* at ¶ 28.

{¶ 13} Here, the state presents two main counter arguments: (1) appellant did not "waive" the amenability hearing but, instead, "stipulated" to amenability; thus, the court, in fact, held an amenability hearing and there was no need to address appellant and conduct a colloquy regarding his waiver of an amenability determination, and (2) even if a colloquy were required, the colloquy here was sufficient under *D.W.*

{¶ 14} For purposes of this appeal, we will assume arguendo that a colloquy, like that discussed in *D.W.*, was required and address appellant's contentions on that argument. On this issue, the state counters the juvenile court engaged in a meaningful dialogue with appellant. The state asserts the colloquy was extensive and appropriate

considering appellant agreed to stipulations in order to facilitate a favorable plea agreement in adult court.

{¶ 15} We agree with the state. At the hearing, the court began by asking appellant if he had any questions regarding what was happening that day, and appellant replied he did not. The court then asked if he understood the ramifications of the probable cause stipulation for the mandatory bindover case, and appellant said he did. The court explained that, once boundover, the adult court could do whatever it wanted, although it usually gave great deference to agreements reached in the juvenile court. At this juncture, appellant's father asked to speak to the court. His father complained about the ways the court had dealt with appellant in the past and the terms of the offered plea agreement. The court indicated to appellant's father that the court's job at the hearing was to try to figure out that appellant understood what was happening. The court then told the parents, appellant, and his attorney to discuss the plea in a conference room. After coming back from the meeting, the court asked appellant whether he intended to accept the plea agreement and he said he did. He denied that anyone had forced or threatened him into accepting the plea agreement. The court asked appellant if he understood that if he accepted the plea he was not going to have the hearing, the state would not be forced to establish probable cause, he would not be able to call witnesses, he would not be able to cross-examine the state's witnesses, he was testifying against his own interest, and an appeal was not likely, and appellant said he understood.

{¶ 16} Specifically with regard to the discretionary bindover cases, the court stated "I hate to beat the dead horse but you understand that the way this agreement has been proposed that two of these would be dismissed, you'd be admitting that you're not capable of rehabilitation in the juvenile system and you would be having all - - one, two, five of these counts transferred to the adult court for trial." (Aug. 29, 2016 Tr. at 18.) Appellant replied he understood. He also stated he understood that the joint recommendation for the five counts would be ten years in adult prison. The court then asked if appellant had any questions or did not understand any words used. Appellant replied that he had no questions and understood the court's explanation.

{¶ 17} After reviewing the dialogue between the trial court and appellant under the plain error standard of review, and under the totality of the circumstances, we find the

trial court's colloquy here was sufficient under *D.W.* The court, through its conversation with appellant, sufficiently ensured appellant's waiver of the right to an amenability hearing was made knowingly and intelligently and was a voluntary relinquishment of a known right. The trial court's dialogue was meaningful, and the trial court utilized the proper inquisitional approach. Initially, appellant was 16 years old and had prior experience in the juvenile justice system. There was no indication during the hearing that appellant had any intellectual or learning deficits that would have prevented his understanding of the court's statements. Also, the trial court granted appellant time to speak with his parents and attorney in a conference room about the situation and his decisions during the hearing. In addition, the trial court explained to appellant that he was admitting he was not capable of rehabilitation in the juvenile system and would be having his charges transferred to adult court. Appellant stated he understood and he had no questions. *See State v. J.T.S.*, 10th Dist. No. 14AP-516, 2015-Ohio-1103, ¶ 31 (stipulation of probable cause was knowing, intelligent, and voluntary waiver of right to a probable cause hearing when court personally addressed appellant and informed him that by entering into a stipulation, the case would be transferred to adult court). Appellant's counsel also assured the court that he had discussed the matter with appellant, and appellant understood, stating "I'm confident that my client has gone -- we've gone around and around with this. I'm confident that he understands what he's doing." (Aug. 29, 2016 Tr. at 13.) (stipulation of probable cause was knowing, intelligent, and voluntary waiver of right to a probable cause hearing when appellant said he had an opportunity to discuss the proceedings with counsel). Thus, the transcript contains a clear indication appellant understood he had a right to an amenability hearing and he intended to waive that right. In response to the trial court's questions, appellant also indicated he understood he would not be able to present evidence or question the state's witnesses. We also note appellant presents no authority for the proposition the trial court was required to define "amenability" or discuss many of the other warnings appellant suggests. *See also J.T.S.* at ¶ 31. (juvenile court not required to provide the juvenile with a legal definition of "probable cause" at bindover hearing). Appellant specifically indicated he had no questions regarding the definition of any of the words the court used. Therefore, based on the totality of the circumstances and pursuant to a plain error standard of review, the

court's colloquy with appellant satisfied the requirement the court ensure that appellant's waiver was knowing, intelligent, and voluntary. We overrule appellant's first assignment of error.

{¶ 18} Appellant argues in his second assignment of error the juvenile court abused its discretion when it failed to appoint a guardian ad litem for him in violation of Juv.R. 4(B)(2) and R.C. 2151.281(A)(2). Juv.R. 4(B)(2) provides:

> **Guardian ad litem; when appointed.** The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
>
> * * *
>
> (2) The interests of the child and the interests of the parent may conflict.

{¶ 19} R.C. 2151.281(A)(2) provides:

> The court shall appoint a guardian ad litem, subject to rules adopted by the supreme court, to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:
>
> * * *
>
> (2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.

{¶ 20} Appellant failed to raise this issue in the court below, so he has waived all but plain error. As explained above, for a court to find plain error in a juvenile delinquency case, an appellant must establish (1) a deviation from a legal rule, (2) the error was obvious, and (3) the error affected the outcome of the proceedings. *Martin* at ¶ 28.

{¶ 21} Juv.R. 4(B) does not require an actual conflict of interest to trigger the need for a guardian ad litem. *State v. Simmonds*, 10th Dist. No. 14AP-1065, 2015-Ohio-4460, ¶ 10, citing *In re Sappington*, 123 Ohio App.3d 448, 453 (2d Dist.1997). " '[T]he juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and [the] child.' " *Id.*, quoting *Sappington* at 453-54.

{¶ 22} The presence of counsel is a factor to consider in appointing a guardian ad litem. *Id.* at ¶ 11. " 'In evaluating the need for a guardian *ad litem*, courts have also considered whether the minor was represented by counsel. * * * A juvenile court should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person present to protect the rights and interests of the minor.' " *Id.*, quoting *Sappington* at 455. The danger of a conflict heightens when the parent has sought the aid of the court against the child, such as when the parent files charges against the child, because the interests of the parent may no longer be consistent with a role that properly protects the child's rights. *Sappington* at 454. In that case, the parent may have an interest, wholly apart from the child's best interest, in committing the child to another's authority. *Id.* Similarly, the appointment of a guardian ad litem may be necessary when a parent is the custodian of both the victim and the alleged juvenile perpetrator. *In re T.B.*, 5th Dist. No. 2015AP050022, 2016-Ohio-575, ¶ 44, citing *In re Sargent*, 5th Dist. No. 00 CA 91 (Aug. 31, 2001). A conflict may also be suggested when a parent argues against legal representation for the child or actions that might increase the parent's financial obligations. *Sappington* at 455. "A parent may clearly have her own agenda, or be advocating her own best interest, which may or may not also be the child's." *In re Howard*, 119 Ohio App.3d 201, 206 (1st Dist.1997). Still, even when it is a parent bringing a charge against a child, there may be no conflict when the parent does not attempt to persuade the court to act in any manner inconsistent with the child's interests, such as urging a harsher punishment that might keep the child away from the parent. *Sappington* at 454-55.

{¶ 23} In the present case, during the hearing, while the trial court was asking appellant if he understood the consequences of his stipulation and plea agreement, appellant's father asked to speak. He told the trial court that when appellant was before the juvenile court two years before, the father told the court appellant had problems that needed addressed through counseling, but the court did nothing to address them, instead sending him to a camp he deemed inadequate. He protested that the current plea agreement, which was for ten years imprisonment at a correctional facility, would not help him. When the trial court told him that appellant could take his chances with a trial, appellant's father wondered if the judge had the power to prevent him from being

boundover and send him somewhere besides adult prison. Appellant's mother also stated that the parents did not agree with the ten-year sentence in the plea agreement. His father believed appellant had been coerced to accept the agreement. The judge then allowed appellant, his parents, and his attorney to meet in a conference room. When they returned, appellant told the court he wanted to accept the plea agreement. Although appellant's father interrupted the court and stated he believed appellant had been coerced into accepting the agreement, when the judge admonished the father that it was appellant's decision, the father said "[i]t was ours." (Aug. 29, 2016 Tr. at 16.)

{¶ 24} After reviewing the relevant case law and the transcript of the hearing, we find the trial court did not commit plain error when it did not appoint a guardian ad litem for appellant. Although appellant's parents did not agree that ten years was a fair sentence for the crimes he committed, and they expressed frustration with the court's perceived rehabilitative failures in proceedings two years prior, the parents had no conflict of "interest" with appellant. Appellant's parents desired the best outcome for appellant, which, in this case was either not being boundover or receiving a less severe sentence in the plea agreement. At no time did appellant's parents actually state they did not want appellant to accept the ten-year plea agreement. Indeed, after meeting with appellant and his counsel, the parents suggested to the court that the decision to accept the plea agreement was "ours." Viewing the parents' sentiments as a whole, it is clear they were motivated not by any personal agenda or gain but by their sincere desire to protect appellant's interest and obtain the best possible outcome for him. In other words, appellant's and his parents' interests were aligned. Again, the dissatisfaction for appellant's parents was more with the judicial system generally, appellant's lack of rehabilitation, and the length of the term for a 16 year old. For these reasons, we find the present circumstances lacked the potential for a conflict of interest between appellant and his parents necessary to require the court to appoint a guardian ad litem for appellant. For these reasons, we overrule appellant's second assignment of error.

{¶ 25} Appellant argues in his third assignment of error the juvenile court erred when it transferred case No. 16JU-5284 to adult criminal court because the mandatory transfer provisions in R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate a child's right to due process and equal protection as guaranteed by the Fourteenth Amendment to the

United States Constitution and Article I, Sections 2 and 16, Ohio Constitution. However, in *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, the Supreme Court held that "the mandatory bindover of certain juvenile offenders under R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) complies with due process and equal protection as guaranteed by the Ohio and United States Constitutions." *Id.* at ¶ 38. Therefore, based on *Aalim*, we overrule appellant's third assignment of error.

{¶ 26} Appellant argues in his fourth assignment of error he was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show trial counsel's performance fell below an objective level of reasonable representation and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶ 27} Here, appellant argues his trial counsel was ineffective for failing to raise a number of objections before the juvenile court previously raised in assignments of error one through three: the juvenile court's failure to engage in a meaningful dialogue with appellant prior to accepting his amenability stipulation, the juvenile court's failure to appoint a guardian ad litem, and the juvenile court's unconstitutional transfer of the case to adult criminal court. However, the failure to object to error alone ordinarily is not enough to sustain a claim of ineffective assistance of counsel. *State v. Holloway*, 38 Ohio St.3d 239 (1988). Furthermore, we have already concluded the arguments posed by appellant here lack merit and, as a result, an objection on those grounds would not likely have been successful. Therefore, for these reasons, we find trial counsel was not ineffective for failing to raise those objections, and we overrule appellant's fourth assignment of error.

{¶ 28} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____