DECISION AND JUDGMENT ENTRY
This is an appeal from an adjudication of delinquency and disposition issued by the Lucas County Court of Common Pleas, Juvenile Division. Because we conclude that appellant's waiver of counsel and entry of admission were proper and the court's dispositional order was within its discretion, we affirm.
Appellant, Mark B., was seven years old when he was removed from his birth mother's home. His years prior to that can only be described as horrific. His natural father had been imprisoned when appellant was an infant for sexually abusing appellant's older siblings. It is not known whether appellant's father sexually abused him, but it is reported that he was physically abused by his mother and sexually abused by her boyfriends. Appellant's mother is purported to have exchanged her children's sexual favors to men in return for room and board. After he was removed from his home, appellant was placed in a series of foster homes. In one of these he was sexually molested by another foster child. In another, he was physically abused by a foster parent. Eventually, appellant was adopted by a couple who were trained as therapeutic foster parents.
Appellant's parents describe him as obsessed with sex. They report that appellant made sexual overtures to his father, a male school teacher and a fellow student at school. He also attempted to mount the family dog and is reported to have tortured the family cat. Appellant's parents repeatedly sought treatment for him in an attempt to curb this behavior.
The incident which serves as the subject of this appeal occurred when appellant was eleven. According to the complaint, appellant was playing with a foster child who was residing in the home when appellant touched the ten-year-old's penis.
On March 12, 1998, appellant appeared before a juvenile magistrate who informed him that the complaint which was filed against him alleged conduct that would constitute the offense of gross sexual imposition if committed by an adult. The magistrate then conducted a Juv.R. 29(B) colloquy with appellant, advising him that if he wished to speak to an attorney he could enter a denial of the complaint allegations.
Following a consultation with his father, appellant chose to waive his right to an attorney and a trial. Appellant then entered an admission. The record contains a written waiver executed by both appellant and his father.
After a predispositional investigation, the court placed appellant on probation. As part of his probation terms, appellant was required to follow certain sex offender "safeguards" designed specifically for him. Included among these "safeguards" were a proscription that appellant have no contact with children under age eleven, not touch any person without that person's consent, limit his contact to people other than his parents to handshakes, and talk to a trustworthy adult when angry or confused.
On June 4, 1998, less than six weeks after appellant's dispositional hearing, his probation officer filed a motion to show cause as to why appellant should not be held in contempt for violating his "safeguards." At a hearing on the motion, the court warned appellant of the possible consequences of a probation violation and again advised him of his right to counsel and a full hearing. Appellant chose to admit his violation and executed a written waiver of his rights. The court found the waiver was "knowing, intelligently and voluntarily" made.
Following the acceptance of the admission, his parents advised the court that appellant's hypersexual behavior had escalated and taken on a premeditated and predatory tone. The parents told the court that they had identified, "* * * a half a dozen victims so far." Appellant's father told the court that he did not believe appellant could return to their home because of the threat he posed to the safety of the other children living there.
Counsel for children's services and appellant's probation officer agreed that appellant could not be returned to the home for safety reasons, but recommended that an attempt be made to place him in a residential psychiatric program. At the conclusion of the hearing, the trial court advised appellant that it was disposed to place appellant in the custody of the Ohio Department of Youth Services ("DYS") for sex offender treatment, but would permit the agencies time to find an alternative placement.
A month later, appellant appeared with counsel for his final dispositional hearing. There, appellant's probation officer informed the court that openings existed at two treatment facilities into which appellant could be placed. On questioning by the court, however, the probation officer conceded that these placements had no element of punishment attached to them and that one of appellant's weaknesses was his inability to appreciate the wrongfulness of his sexual behavior. In the end, the court ordered appellant into the custody of the Ohio Department of Youth Services with his commitment to include sex offender treatment. Appellant now brings this appeal, challenging his delinquency adjudication and disposition.
Appellant sets forth the following four assignments of error:
 "I. Appellant was not properly represented before the trial court.
 "II. The trial court erred in accepting Appellant's admission.
 "III. Appellant's conduct would not be criminal if committed by an adult; therefore, adjudicating Appellant a delinquent child was improper.
"IV. Appellant was unlawfully committed to DYS."
 I.
We shall discuss appellant's first and second assignments of error together. Appellant asserts that his initial waiver of counsel was ineffective because he did not understand the nature of his rights and, in any event, a guardian ad litem
should have been appointed for him at the outset.
In support of his argument that his waiver of rights and admission were not properly made, appellant points to the fact that he was eleven years old at the time, attended special education classes, and had been diagnosed with multiple psychiatric disorders. Moreover, the only advice appellant received as to whether to waive counsel and enter an admission came from his adoptive father who, according to appellant, was actually seeking to have him incarcerated.
Juveniles in delinquency proceedings are entitled to many of the constitutional protections afforded their adult counterparts, including the right to counsel. In re Gault
(1967), 387 U.S. 1, 41. Juv.R. 29(B) requires that the court advise the juvenile of these rights and, prior to accepting any waiver, ascertain whether he or she understands the rights enumerated, Juv.R. 3; Juv.R. 29(D); In re Nation (1989), 61 Ohio App.3d 763,765, and accept such waiver only after the court has satisfied itself that the waiver is voluntarily, knowingly and intelligently made. Gault at 42; Juv.R. 29(D).
In this matter, at both the initial adjudicatory hearing on the gross sexual imposition allegation and at the show cause hearing on the probation violation, the court engaged appellant in colloquies in which his rights and the consequences of his waiver of these rights were explained. Additionally, the court probed appellant for his understanding of these concepts and explained them to him when questions arose. In both instances the court made express findings that appellant knew his rights and chose voluntarily to waive them in full knowledge of the potential consequences.
The court's determination that appellant's waiver of rights and admission in both instances is supported by the record. Even though appellant was of tender years during these hearings, his intelligence is unquestioned. The special education classes he attended were for children with behavioral problems, not a lack of intellectual capacity. Although it is clear that appellant has psychiatric problems, there is no evidence to suggest that this interfered with his reason. Indeed, a review of his interaction with both the magistrate and the juvenile judge reveals someone who is well aware of the allegations made against him and the potential consequences of the proceedings.
With respect to appellant's argument that the court should have sua sponte appointed a guardian ad litem for him at the adjudicatory hearing, this position is premised on a purported overt conflict of interest between appellant and his parents at that hearing. The record simply does not support this assertion.
The parents' avowed purpose at the adjudicatory hearing was two-fold: to protect the other children in the household from appellant's behavior and to obtain for appellant help in controlling his sexually predatory behavior. It was not until the final dispositional hearing — after the probation violation and after counsel had been obtained for appellant — that his parents finally conceded that it might be necessary to commit him to the sexual offender treatment program at DYS.
Upon our thorough review of the record, we cannot say that the court erred in failing to appoint counsel or a guardianad litem for appellant at the adjudicatory hearing. Accordingly, appellant's first assignment of error is not well-taken.
Appellant's argument in his second assignment of error is much the same as in his first. Appellant asserts that he was too young and too troubled to understand the nature of the charge or he was simply incompetent to stand trial.
Again, the court made a specific finding that appellant's waiver of rights and admission was knowing, voluntary, and intelligently given. The record supports that determination. Accordingly, appellant's second assignment of error is not well-taken.
 II.
In his third assignment of error, appellant insists that his delinquency adjudication was improper because, had he been tried as an adult, he could have maintained an insanity defense.
An admission in a delinquency proceeding constitutes a waiver of a juvenile's right to challenge the evidence. Juv.R. 29(D)(2); In re Green (1982), 4 Ohio App.3d 196, 198. An insanity plea is intended to negate the intent element necessary for a criminal conviction. See State v. Wilcox (1982), 70 Ohio St.2d 182,192; R.C. 2901.01(14). Therefore, to interpose an insanity defense is to challenge the evidence of an alleged delinquent's intent, an exercise waived by the entry of an admission to the complaint. Since we have already concluded that appellant's admission was properly accepted, any insanity argument is waived. Accordingly, appellant's third assignment of error is not well-taken.
 III.
In his final assignment of error, appellant contends that his probation revocation was improper, the court abused its discretion in committing him to the custody of the Ohio Department of Youth Services, and the commitment of a twelve year old to DYS for "sex play" violates public policy.
According to appellant, the "safeguards" which specified his conduct on probation were overly broad and vague and the record is silent as to whether he received notice pursuant to Juv.R. 35(B) of the grounds for which revocation was sought.
The record refutes these claims. A copy of the "safeguards" is in the record. Appellant never complained at trial that he had not received the list of "safeguards," nor is there any other indication of record suggesting the probationary conditions were withheld from him. Moreover, the list clearly forbids appellant from having contact with children under age eleven, from touching adults without their permission, and directs him to speak to a trustworthy adult when confused or angry. The record also shows that on June 4, 1998, appellant was personally served with a summons and a copy of a show cause motion which alleged that he violated each of the "safeguards." Therefore, appellant's assertions that he lacked notice are meritless.
Appellant also insists that he may not be committed to the custody of DYS for a probation violation. This position is erroneous. In re Peggy L. (Dec. 8, 1995), Lucas App. No. L-95-109, unreported.
As for appellant's alternative assertion that committing him to DYS was an abuse of discretion, we find this argument to be without merit as well. An abuse of discretion is more than an error of law or of judgment. The term connotes the court's attitude is arbitrary, unreasonable or unconscionable.Berk v. Matthews (1990), 53 Ohio St.3d 161, 168-169. Here, the court explained its reason for imposing commitment to DYS as to impress upon appellant the wrongfulness of his acts and to protect others from appellant's sexually predatory behavior. We cannot say that these reasons constituted an abuse of discretion. Finally, appellant insists that his commitment to DYS is against public policy. In support of his position, appellant cites In reM.D. (1988), 38 Ohio St.3d 149, in which the Supreme Court of Ohio concluded that to charge a twelve year old with complicity to rape when "playing doctor" with two five year olds was against public policy.
Notwithstanding the Supreme Court's rhetoric, its legal basis for the M.D. decision was that complicity cannot be charged unless an underlying offense is actually committed. Noting that the type of rape alleged required an element of sexual satisfaction, the court voiced doubt that the element was "* * * physiologically or emotionally possible in a child of the tender age of five * * *" and, in any event, there was no evidence of record to suggest otherwise. As a result, there could have been no rape for which M.D. was an accomplice.
In the present matter, appellant was eleven years old and, as part of his admission, told the court that he had "sexual thoughts" prior to initiating contact with his victim. Our view is that, unlike a five year old, eleven year olds may be capable of desiring sexual satisfaction. Indeed, this is what the evidence in this case suggests. Consequently, this case is distinguishable from In re M.D.
Accordingly, appellant's final assignment of error is not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
PETER M. HANDWORK, J., MELVIN L. RESNICK, J., and JAMES R. SHERCK, J., concur.