[Cite as *In re T.B.*, 2016-Ohio-575.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: T.B., | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| ALLEGED DELINQUENT CHILD | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| | Case No. 2015AP050022 |
| | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 12, 2016 |
| APPEARANCES: | |


| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| Tuscarawas County Prosecutor's Office<br>RYAN D. STYER<br>Tuscarawas County Prosecutor<br>AMANDA K. MILLER<br>Assistant Prosecuting Attorney<br>Tuscarawas County Courthouse Annex<br>125 E. High Ave.<br>New Philadelphia, Ohio 44663 | The Office of the Ohio Public Defender<br>BROOK M. BURNS<br>Assistant State Public Defender<br>250 Broad St., Suite 1400<br>Columbus, Ohio 43215 |

*Hoffman, P.J.*

{¶1}    Appellant T.B., a delinquent child, appeals his adjudication entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, on one count of burglary and two counts of theft.  Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On August 13, 2014, T.P., Appellant's mother, spent the night with her husband in Pennsylvania and returned home to Tuscarawas County, Ohio, to find firearms and an ATV missing from her house and property.  Tuscarawas County Sheriff Detective Jeff Moore investigated the theft.  Following a tip, Moore found a number of firearms, an ATV and a dirt bike at the home of Sara Raines. The firearms belonged to T.P.'s husband.

{¶3}    On September 2, 2014, Moore visited the Attention Center, where Appellant was being held on an unrelated case.  Appellant's mother, T.P., was present. Appellant denied involvement in the theft.

{¶4}    On September 16, 2014, Detective Moore returned to the Attention Center upon Appellant's request to speak to him, and Appellant's attorney was present. However, Detective Moore was met by Appellant's attorney, and told Appellant did not wish to speak with Moore.   Accordingly, no interview took place.

{¶5}    On September 29, 2014, Detective Moore spoke with Appellant at Linda Martin Attention Center where he had been transferred.  Appellant's other pending cases had been disposed of, and Appellant did not have counsel or a parent present.  After again reading Appellant his Miranda rights, Moore asked Appellant if he wanted to speak

to him, falsely implying a friend had implicated him in the theft.  Appellant then made statements to Moore, and signed a written statement.

{¶6}  On October 10, 2014, a complaint was filed in the Tuscarawas County Juvenile Court alleging Appellant was delinquent of one count of burglary and two counts of theft, in violation of R.C. 2911.12(A)(2) and 2913.02(A)(1), respectively.

{¶7}  On February 14, 2015, Appellant filed a motion to suppress the statements, admissions, and/or confessions made by Appellant to members of the Tuscarawas County Sheriff's Department related to the charges herein. The trial court conducted a hearing on the motion.  Following hearing, the trial court overruled the motion via Judgment Entry filed March 19, 2015.

{¶8}  Following a trial to the court, Appellant was adjudicated delinquent of the charges.  The trial court did not appoint a guardian ad litem on behalf of Appellant prior to trial.  The trial court imposed two concurrent six month commitments to the Ohio Department of Youth Services for the theft offenses consecutive to a one year commitment for the burglary charge, for a total commitment of eighteen months.

{¶9}  Appellant appeals, assigning as error:

{¶10} "I. THE TUSCARAWAS COUNTY JUVENILE COURT [SIC] WHEN IT ALLOWED T.B.'S SEPTEMBER 29, 2014 STATEMENT TO LAW ENFORCEMENT TO BE ADMITTED AT TRIAL BECAUSE T.B.'S WAIVER OF HIS MIRANDA RIGHTS WAS NOT KNOWING, INTELLIGENT, OR VOLUNTARY.  FIFTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 16.

**{¶11}** "II. THE TUSCARAWAS COUNTY JUVENILE COURT VIOLATED T.B.'S RIGHT TO DUE PROCESS OF LAW WHEN IT ADJUDICATED HIM DELINQUENT OF BURGLARY WITHOUT SUFFICIENT, CREDIBLE, AND COMPETENT EVIDENCE OF EACH ELEMENT OF THE OFFENSE, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 16; JUV.R. (E)(4).

**{¶12}** "III. THE TUSCARAWAS COUNTY JUVENILE COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO APPOINT A GUARDIAN AD LITEM TO PROTECT T.B.'S BEST INTERESTS.    R.C.  2151.281(A)(2);  JUV.R.  4(B)(2);  FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 16."

I.

**{¶13}** In his first assignment of error, Appellant maintains the trial court erred in overruling his motion to suppress statements made while in custody as his waiver of his Miranda rights was not knowing, intelligent or voluntary.

**{¶14}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See: *State v. Fanning (1982),* 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Klein (1991),* 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger (1993),* 86 Ohio App.3d 592, 621 N.E.2d 726.

**{¶15}** Secondly, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See: *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

**{¶16}** Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry (1994),* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor (1993),* 85 Ohio App.3d 623, 627, 620 N.E.2d 906; and *State v. Guysinger (1993),* 86 Ohio App.3d 592, 621 N.E.2d 726. As the United States Supreme Court held in *Ornelas v. U.S. (1996),* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**{¶17}** In *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1884-85, 68 L. Ed. 2d 378 (1981), the United States Supreme Court held,

> *Miranda* itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, "the interrogation must cease until an attorney is present." 384 U.S., at 474, 86 S.Ct., at 1627. Our later cases have not abandoned that view. In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court noted that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and

had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel. 423 U.S., at 104, n. 10, 96 S.Ct., at 326, n. 10; see also *id.*, at 109–111, 96 S.Ct., at 329–330 (White, J., concurring). In *Fare v. Michael C., supra*, 442 U.S., at 719, 99 S.Ct., at 2569, the Court referred to *Miranda's* "rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." And just last Term, in a case where a suspect in custody had invoked his *Miranda* right to counsel, the Court again referred to the "undisputed right" under *Miranda* to remain silent and to be free of interrogation "until he had consulted with a lawyer." *Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980). We reconfirm these views and, to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.

The Fifth Amendment guarantees no person "shall be compelled ***to be a witness against himself" when he risks deprivation of his liberty. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967). The State cannot use the custodial statements of a defendant made in response to interrogation by law enforcement unless the record reflects the defendant was first advised of his constitutional rights and then knowingly, intelligently and voluntarily waived those rights. *Id.* Further, a "heavy burden rests on

the government to demonstrate the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain or appoint counsel." *State v. Parker*, 44 Ohio St.2d 172 (1975).

**{¶18}** At the November 18, 2014 hearing, Detective Moore testified on cross-examination,

> Q. Well, now wait a minute, are you saying that on the 16th, when I was there with [T.B.], that you were there to interview him about matters not involving the six complaints we're dealing with here today?

> A. I was investigating multiple burglaries in the southern part of Tuscarawas County, and, I believed, that [T.B.] also had information on a Drew Evans. And [T.B]. had given me indication, prior to that, that he was willing to try to do some work, or, to help himself, to provide me information, that maybe could help him get a deal. I believe that is why [T.B.] called for me to be there. That's why he asked for you to be there. That is the reason we were there that day, and that's when, I believe, that you told me we can't help you at this time, I'm not gonna let my client talk to you.

> Q. So your testimony here today is, when you went to the Attention Center on the 16th, you were not there to gather information about these investigations, about these break-ins and thefts that we're talking about here today?

> A. Here's my testimony on that. Your client called me there. I don't know what your client was going to tell me, that's why I was there. I was

hoping he was gonna provide me information on these cases, but I wasn't there to go interview him, I was there because he requested my presence.

Q. Okay, when he called to request your presence, was it because he had a scheduled appointment with me, and he knew that, and he is that…

A. I believe that…

Q. …caused him to call…

A. …I believe that's the probability, yes.

* * *

Q. Okay, so would you agree, at least as far as this report is concerned, between September 16th and your interview with [T.B.] on September 29th, you hadn't got any information from other victims or witnesses?

A. I could agree with that.

Q. Alright. So is it possible, in fact likely, that when you went out to visit [T.B.] on September 29th, it was because you wanted another chance to give [T.B.] an opportunity to make confessions, which you thought he had?

A. It was my last chance effort to interview [T.B.], again, to see if he would admit to the theft cases, yes.

Q. Even though, on the 16th, his attorney had indicated to you he did not want to speak to you, correct?

A. I was well aware, and I spoke with Attorney, the Prosecuting Attorney Miller, that, and learned, that his other case was resolved, and he

no longer had an attorney representing him.  Also, it was ten days later, I also checked that to make sure, and it was ten days later, in doing my interview, so, um, even any right assertion at that point should not bind me by any means.

Q. Because ten days had passed?

A. Yes, sir.

Q. Okay, is that, is that a…

A. I don't know what the U.S. Supreme Court case is that documents that, but that is a, yes, a Supreme Court case, yes.

Q. Okay, alright.  And did you attempt to contact me that you were going to interview [T.B.] on the 29th?

A. I did not.

Q. Why not?

A. You were no longer representing him.

Q. And why was that?

A. His case was resolved in Court. These were new cases.

* * *

Q. And did you indicate to [T.B.] that Trevor Duran implicated him?

A. Well, I told him that I had video of the two of them inside Trevor's truck together, with the stolen four-wheeler in the back.

Q. Which was, admittedly, not true, correct?

A. That was not true.

Tr. at 33-39.

**{¶19}** On redirect examination, Detective Moore testified,

Q. Detective Moore, you stated that you had spoken to a prosecutor before you went to attempt to interview [T.B.] on the 29th?

A. Yes.

Q. Why did you consult a prosecutor before you went to talk to him?

A. Because I was concerned that he still had an attorney representing him.

Q. Okay, and how were you advised?

A. I was told that he was no longer being represented by anyone, and that I could proceed with a, a follow-up interview.

\* \* \*

Q. Okay, after, on September 29th, when you went to interview [T.B.], did you have reason to further investigate the breaking and entering of the Brown's gas station in Gnadenhutten?

A. I did not.

Tr. at 46-47.

**{¶20}** Detective Moore was met by Appellant's attorney prior to any interview taking place on September 16, 2014. Appellant was not in custody on the charges herein, and was not being held on the charges herein. Rather, Appellant was in custody pending charges on unrelated matters. It is unclear from the record whether Appellant requested Detective Moore come to the Attention Center on the matters relating to the charges at hand or on the matters for which Appellant was being held in custody. However, no interview took place, Appellant was never interrogated on the charges herein or held in

custody relative to the charges herein on September 16, 2014; therefore, we find Appellant did not invoke his right to counsel on September 16, 2014, relative to these charges.

{¶21} In *State v. Johnson* Licking App. No. 99-CA-26, (Nov. 5, 1999), this Court held,

> According to the court's findings of fact from the suppression hearing, appellant went to the Newark Police Department at the request of Detective Huffman on June 23, 1998. Arrangements for the interview were made through telephone conversations. Upon appellant's arrival, Detective Huffman asked appellant to have a seat in the lobby while they waited for the arrival of a social worker, who was to participate in the interview. Appellant remained in a lobby area, which was open to the public. After a short time, appellant advised a secretary that he no longer wished to wait, and that if Detective Huffman wanted to talk to him, he would have to contact appellant's attorney. After making the statement, appellant proceeded to leave the lobby area.

> Detective Huffman, having overheard appellant's statement to the secretary, followed appellant. He caught up with appellant near the stairway leading out of the police department. Detective Huffman asked appellant what the problem was. At this time appellant repeated his statement, telling Detective Huffman he would have to speak to appellant's attorney. Based upon the evidence he had acquired up to this point in the investigation, Detective Huffman elected to arrest appellant. Appellant was taken into

custody, and brought down the stairway, back into the police department. During this period of time, appellant offered to remain seated in the lobby while waiting for his attorney. Detective Huffman did not respond.

While appellant was being taken back to the detective division with the intention of processing his arrest, appellant said, "I don't even know what all of this is about." In response to that statement, Detective Huffman asked appellant if he wished to talk without an attorney. Detective Huffman made it clear to appellant that the decision as to whether or not he wished to talk would have no bearing on whether he was going to be incarcerated. Appellant then indicated that he did wish to talk. Appellant was thereafter advised of his rights pursuant to *Miranda v. Arizona,* and gave a statement to Detective Huffman.

In *McNeil v. Wisconsin* (1991), 501 U.S. 171, 182, 111 S.Ct. 2204, 115 L.Ed.2d 158, at footnote three, the United States Supreme Court noted in *dicta* that the court had never held that a person can invoke his *Miranda* right to counsel anticipatorially, in a context other than custodial interrogation. The fact that the court had in the past allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation, did not necessarily mean that the court would allow such right to be asserted initially outside the context of a custodial interrogation. *Id.*

A number of federal courts have used this footnote, on various fact patterns, to hold that a defendant may not invoke his right to counsel under

*Miranda* in the absence of both interrogation and custody. In *United States v. Barrett* (Alaska 1992), 814 F.Supp. 1449, 1454, the court noted that the *McNeil* footnote appeared to support the proposition that an accused cannot invoke his right to counsel until he is taken into custody, and prior to interrogation, warned of those rights. In *United States v. Wright* (9th Cir.1992), 962 F.2d 953, 955, the court noted that the *McNeil* footnote strongly suggests the *Miranda* rights may not be invoked in advance, outside the custodial context. Likewise, the court in *Alston v. Redman* (3rd Cir.1994), 34 F.3d 1237, 1248, *cert. denied* (1995), 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085, the court concluded that there must be both custody and interrogation before the right to counsel can be invoked. The Seventh Circuit concurred, holding that the *Miranda* right to counsel attaches only in the context of custodial interrogation and may not be waived anticipatorially. *United States v. LaGrone* (7th Cir.), 43 F.3d 332, 337.

     \*\*\*

     It is clear that appellant's first two statements in the instant case regarding an attorney were not made when he was in custody, as he came voluntarily and was free to go. In fact, appellant began to leave the police station, before he was arrested. At the time he was sitting in a public lobby, awaiting the arrival of the social worker, he was not in custody. After he was taken into custody by Detective Huffman, he made no further request for an attorney, and executed a valid waiver of his rights pursuant to *Miranda.*

Appellant signed a written *Miranda* form, without requesting his counsel be present for questioning.

**{¶22}** Prior to the September 29, 2014 interview, Detective Moore contacted the Prosecutor's Office and determined Appellant's previous cases were completed and no new cases were pending in which Appellant was represented by counsel. The prosecutor instructed Detective Moore to proceed with the interview, and the current charges were not filed until after the interview. After Detective Moore arrived at the interview, he Mirandized Appellant verbally and in writing. Appellant's signature appears on the waiver.

**{¶23}** As to Detective Moore's deceptive statements, the officer did tell Appellant his adult co-conspirator had confessed to his part in the crimes and implicated Appellant as a principal offender; however, the tactic was not coercive, cruel or a prohibited act.

**{¶24}** Based upon the foregoing, we do not find the trial court erred in overruling Appellant's motion to suppress. The interview was conducted while Appellant was incarcerated on unrelated charges. There is no evidence Appellant did not feel he was free to refuse to make statements or to discontinue the interview, when in fact he had exercised said rights in the past. The record reflects Appellant had a lengthy history with the juvenile system and was aware of the procedures. Further, Appellant was not represented by counsel at the time of the interview, and he did acknowledge and intelligently waive his Miranda rights. He cannot and did not anticipatorily invoke his right to counsel as it relates to the instant charges.

**{¶25}** The first assignment of error is overruled.

II.

{¶26} In the second assignment of error, Appellant T.B. maintains his convictions are against the sufficiency of the evidence.

{¶27} In *State v. Jenks,* the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks*, supra, at paragraph two of the syllabus. When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.

{¶28} Appellant specifically asserts the State failed to present sufficient evidence of a trespass or that the theft occurred when the victim was present or likely to be present.

{¶29} Appellant was convicted of burglary, in violation of R.C. 2911.12(A)(2), which reads,

> (A) No person, by force, stealth, or deception, shall do any of the
> following:
>
> * * *
>
> (2) Trespass in an occupied structure or in a separately secured or
> separately occupied portion of an occupied structure that is a permanent or

temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

**{¶30}** A person is guilty of criminal trespass when he "knowingly, recklessly, or negligently enters or remains on the land or premises of another without privilege to do so." R.C. 2911.11(A)(1)-(4).

**{¶31}** Appellant argues he did not commit trespass because he also lived at the house with his mother and stepfather. The complaint filed in this matter reflected T.B. lived at the property with his mother. Appellant's mother was not home when the thefts were alleged to have occurred.

**{¶32}** The record demonstrates T.B. was not allowed to live in the home with his mother while his stepfather was at the residence. T.B. would not live in the home on weekends when his stepfather came home according to the testimony of T.P., T.B.'s mother. T.P. testified she did not know where T.B. lived when he did not stay with her, but he would sometimes stay with his girlfriend. T.P. testified the stepfather did not know T.B. would stay at the house, and did not give permission for T.B. to stay at the house. T.P. testified T.B. did not have keys to the house. T.P. testified on the night of the incident, the house was secured when she left to visit her husband and no one was supposed to be in the home. T.P. testified T.B. was not supposed to be in the house while she was away visiting her husband, and she had not told anyone she was leaving town. Therefore, the record demonstrates T.B. did not have permission to be on the premises at the time the acts occurred.

**{¶33}** As to T.P.'s absence from the residence at the time the incident occurred, in *State v. Kilby,* 50 Ohio St.2d 21, (1977), the Ohio Supreme Court held at Syllabus 1,

> Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of aggravated burglary under R.C. 2911.11.

**{¶34}** The record is sufficient to demonstrate T.P., T.B.'s Mother, regularly inhabited the house, she was in and out of the house on the day in question and T.B. had no reason to believe his mother was not present at the time of the theft offense.

**{¶35}** We find the evidence is sufficient, when viewed in a light most favorable to the prosecution, to convince the average mind of T.B.'s guilt beyond a reasonable doubt of one count of burglary, in violation of R.C. 2911.12(A)(2).

**{¶36}** The state also set forth sufficient evidence of T.B.'s guilt on two counts of theft, in violation of R.C. 2913.02(A)(1). The record demonstrates T.B. confessed to Detective Moore in a written statement to the theft of the property at issue herein. As set forth in our analysis and disposition of the first assignment of error, the trial court properly considered the written statement.

**{¶37}** The second assignment of error is overruled.

III.

**{¶38}** Finally, Appellant maintains the trial court erred in failing to appoint a guardian ad litem to protect his interests in the proceedings pursuant to R.C. 2151.281(A)(2) and Juvenile Rule 4(B)(2).

**{¶39}** R.C. 2151.281(A)(2) reads,

(A) The court shall appoint a guardian ad litem, subject to rules adopted by the supreme court, to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

(1) The child has no parent, guardian, or legal custodian.

(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.

**{¶40}** Juvenile Rule 4(B)(2) reads,

**(B) Guardian ad litem; when appointed**

The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

\*\*\*

(2) The interests of the child and the interests of the parent may conflict;

**{¶41}** Our standard of reviewing the court's decision whether to appoint a guardian ad litem is the abuse of discretion standard. *In re: Sappington* (1997), 123 Ohio App.3d 448, 454, 704 N.E.2d 339. The Supreme Court has repeatedly defined the term "abuse of discretion" as implying the court's attitude is unreasonable, arbitrary, or unconscionable. See, e.g., *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

**{¶42}** Juv. R. 4 requires the appointment of a guardian ad litem where there is a possibility of conflict, while the statute requires appointment only if the court finds there is

an actual conflict of interest. Therefore, the relevant question on appeal is whether the record reveals an actual or potential conflict of interest which required the appointment of a guardian ad litem.

**{¶43}** R.C. 2151.281(H), and Juv. R. 4(C) permit an attorney to serve both as counsel and as guardian ad litem for a child in a juvenile court proceeding, provided the court makes an explicit dual appointment and no conflicts arise in the dual representation. Here, the court did not order dual representation.

**{¶44}** This Court in *In re: Sargent,* 5th Dist. Licking App. No. 00CA91 and 00CA92, addressing a similar factual situation found at least a potential conflict where a parent struggles with being the parent of the offender and the victim. This Court held,

> Unlike the mother in Shaw, Carla does not appear to be in an overtly adversarial relationship with appellant; in fact, as the trial court noted in ruling on appellant's objection, she made several positive comments. Nonetheless, no further inquiry was pursued by the magistrate as to Carla's obvious dual concern for her daughter, as manifested in particular by Carla's desire to "look out" for her. "A parent may clearly have her own agenda, or be advocating her own best interest, which may or may not also be the child's." *In re Howard* (1997), 119 Ohio App.3d 201, 206. See also, *In re McQuitty* (May 5, 1986), Butler App. No. CA85–04–016, unreported. While we expressly decline to adopt a bright-line rule necessitating the appointment of a guardian ad litem in every situation where a parent is the custodian of both the victim and the alleged juvenile perpetrator, we are persuaded under the facts in this case that the possibility of conflict of

interest was present to the extent that the trial court abused its discretion in failing to make an appointment pursuant to R.C. 2151.281(A), prior to acceptance of the pleas.

**{¶45}** Here, we note Appellant was 18 years of age at the time he appeared at trial herein. A review of the record does not demonstrate a conflict of interest to the extent to cause us to find the trial court abused its discretion in failing to make an appointment of a guardian ad litem pursuant to R.C. 2151.281(A). The record does not reflect Appellant was not zealously represented by his attorney or that any conflicts arose in his representation. Further, the record does not demonstrate any actual conflict between Appellant and his mother. Therefore, we do not find the trial court abused its discretion in failing to appoint a guardian ad litem herein.

**{¶46}** The third assignment of error is overruled.

**{¶47}** Appellant's adjudication in the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur